# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6231 | **DATE** | 3/25/2003 |
| **CASE TITLE** | Harry K. Tressel vs. Combined Insurance Co. of America | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKETED**

MAR 2 7 2003

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies Plaintiff's motion for summary judgment [17-1] and grants Defendant's cross-motion for summary judgment [19-1]. The Court enters judgment in favor of Defendant. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367(c)(3). This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | **33** |
| | Notified counsel by telephone. | | MAR 2 7 2003 date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| TBK | courtroom deputy's initials | 03 MAR 26 AM 8: 39 | MAR 2 7 2003 date mailed notice | | |
| | | 10 FILED-CD-03 | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HARRY K. TRESSEL,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )          Judge Ronald A. Guzmán
                                     )
COMBINED INSURANCE COMPANY           )          01 C 6231
OF AMERICA,                          )
                                     )          DOCKETED
            Defendant                )
                                                MAR 2 7 2003

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Harry K. Tressel ("Tressel") has brought this action against his

employer, Combined Insurance Company of America ("Combined"), under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* and Illinois

common law to promote Tressel to Assistant Vice President and to pay Tressel damages

and other relief. Tressel has moved for summary judgment pursuant to Fed. R. Civ. P.

("Rule") 56, and Combined has cross-moved. For the reasons provided in this

Memorandum Opinion and Order, the Court denies Tressel's motion for summary

judgment and grants Combined's cross-motion.


## FACTS

Tressel was born on November 8, 1943, and turned 59 years old in November

2002. (Pl.'s LR 56.1(a)(3) ¶¶ 1-2; Def.'s LR 56.1(a)(3) ¶ 8.) He holds an A.B. degree

with honors in mathematics from Bowdoin College in Maine, a Master of Actuarial

Science degree from the University of Michigan Graduate School of Business

Administration in Michigan, a J.D. from Northwestern School of Law in Illinois, and he is a licensed attorney. (Pl.'s LR 56.1(a)(3) ¶¶ 9-10.) Tressel is also a Fellow of the Society of Actuaries (FSA), a Member of the American Academy of Actuaries (MAAA), a Fellow of the Canadian Institute of Actuaries (FCIA), and he is a licensed CPA. (Pl.'s LR 56.1(a)(3) ¶ 9.) Defendant Combined develops, markets and sells disability, life, supplemental accident and health insurance. (Def.'s LR 56.1(a)(3) ¶ 1.)

Tressel is currently employed by Combined and began working there on October 6, 1986, when he was 42 years old. (Pl.'s LR 56.1(a)(3) ¶¶ 3-4, 7; Def.'s LR 56.1(a)(3) ¶ 8.) Robert Sabaj has supervised Tressel since 1987. (Def.'s LR 56.1(a)(3) ¶ 4.) Steven E. Lippai was the head of the Actuarial Department until March 1999, in which Tressel has worked. (Def.'s LR 56.1(a)(3) ¶¶ 4-5.) At that time, Lippai was promoted to Executive Vice President and Chief Actuarial of Combined, and John Bradley replaced him as the head of the Actuarial Department. (Def.'s LR 56.1(a)(3) ¶ 5.)

In October 1988, Tressel was promoted to Senior Staff Actuary. (Def.'s LR 56.1(a)(3) ¶ 10.) By May 1989, Tressel completed all exams necessary to become an FSA and was then promoted to Assistant Actuary in April 1990. (Def.'s LR 56.1(a)(3) ¶¶ 12, 14.) In September 1996, after having completed the Canadian actuarial exams, Tressel became the only one of Combined's employees to be designated as a Fellow of the Canadian Institute of Actuaries (FCIA). (Pl.'s LR 56.1(a)(3) ¶¶ 19, 39; Def.'s LR 56.1(a)(3) ¶ 29.) On December 22, 1997, he was promoted to be Combined's official Appointed Actuary in Canada, and on April 4, 1999, he was promoted to Associate Actuary, while also continuing to be the official Appointed Actuary in Canada. (Pl.'s LR 56.1(a)(3) ¶¶ 16, 19, 33; Def.'s LR 56.1(a)(3) ¶ 42.)

Jeffrey A. Uhl was born on May 17, 1957, and is approximately fourteen years younger than Tressel. (Pl.'s LR 56.1(a)(3) ¶ 15; Def.'s LR 56.1(a)(3) ¶ 50.) He was hired by Combined on September 1, 1981. (Pl.'s LR 56.1(a)(3) ¶ 15; Def.'s LR 56.1(a)(3) ¶ 50.) Uhl began his career with Combined as an Actuarial Technician and was promoted to Senior Staff Actuary in or around April 1988. (Def.'s LR 56.1(a)(3) ¶ 50.) In November 1988, he became an FSA. (*Id.*) He was then promoted to Assistant Actuary and Assistant Vice President in or around April 1992, and he was then promoted to Vice President and Life Actuary in April 1996. (*Id.*) Uhl is the only person to have been promoted to the position of Assistant Vice President after 1992. (Def.'s LR 56.1(a)(3) ¶ 51.)

Peter M. Crockett, born in 1995, has been employed by Combined since October 1986. (Pl.'s LR 56.1(a)(3) ¶ 16; Def.'s LR 56.1(a)(3) ¶ 42.) Crockett became an FSA in 1996, was promoted to Associate Actuary in April 1999, and held that position at the time of the filing of the instant complaint. (Pl.'s LR 56.1(a)(3) ¶¶ 16-17; Def.'s LR 56.1(a)(3) ¶¶ 42-43.)

Brian J. Moore, who was born in 1957, has also been employed by Combined since October 1986, was promoted to Associate Actuary in April 1999, and held that position at the time of the filing of the instant complaint. (Pl.'s LR 56.1(a)(3) ¶ 16; Def.'s LR 56.1(a)(3) ¶¶ 42-43.) He became an FSA in 1995. (Pl.'s LR 56.1(a)(3) ¶ 17.)

Tressel received performance evaluations while working at Combined. (Def.'s LR 56.1(a)(3) ¶¶ 11, 13, 16, 17, 22-25, 33, 44-45.) In his 1992 performance evaluation he received an overall rating of "Fully Competent/Acceptable," which was a lower rating than those performance evaluations completed between 1989 to 1991. (Def.'s LR

3

56.1(a)(3) ¶ 17.) Tressel received criticism in his 1992 evaluation for missing deadlines. (*Id.*.) In response to the evaluation, Tressel sent a memorandum dated April 15, 1993, to Combined's Human Resources manager, Liz Whitte, and sent a copy of the memorandum to Lippai. (Pl.'s LR 56.1(a)(3) ¶ 37; Def.'s LR 56.1(a)(3) ¶ 18.) In the memo, Tressel inquired as to being promoted to a higher position, like Uhl had, and also wanted to know about what possible adverse affect his 1992 employment evaluation would have on his chance of being promoted. (Pl.'s LR 56.1(a)(3) ¶ 35; Def.'s LR 56.1(a)(3) ¶ 19.) Although the 1992 employment evaluation was not changed, Lippai told Tressel, while standing near or in Tressel's office, that Tressel's route to the promotion of Assistant Vice President was to become an FCIA. (Pl.'s LR 56.1(a)(3) ¶ 36; Def.'s LR 56.1(a)(3) ¶¶ 20-21.)

In June and August of 1997, after having become an FCIA and having not been promoted, Tressel sent memos to Lippai requesting information about the promotion to Assistant Vice President. (Pl.'s LR 56.1(a)(3) ¶¶ 40-42; Def.'s LR 56.1(a)(3) ¶¶ 26-27.) On November 20, 1997, Tressel, then fifty-four years old, met with Lippai and Sabaj and was promoted to Appointed Actuary in Canada. (Pl.'s LR 56.1(a)(3) ¶¶ 45, 47; Def.'s LR 56.1(a)(3) ¶ 28.) At that meeting, Tressel asked about being promoted to Assistant Vice President. (Pl.'s LR 56.1(a)(3) ¶ 46; Def.'s LR 56.1(a)(3) ¶ 28.) Lippai stated that there were two conceivable promotions for Tressel: that of Assistant Vice President and Assistant Actuary or Associate Actuary. (Pl.'s LR 56.1(a)(3) ¶ 46.) Lippai stated that Tressel's promotion to Assistant Vice President was still a few years off, and he would recommend that Tressel be promoted to Associate Actuary. (Pl.'s LR 56.1(a)(3) ¶ 46; Def.'s LR 56.1(a)(3) ¶ 28.)

4

On December 22, 1997, Tressel sent a memo to Lippai, Sabaj, and Combined's Human Resources Department alleging age discrimination as the reason for his not being promoted to Assistant Vice President. (Def.'s LR 56.1(a)(3) ¶ 30.) This was the first time Tressel came to believe that Combined was violating age discrimination law, although he was suspicious of age discrimination before then. (Def.'s LR 56.1(a)(3) ¶ 46.)

On January 22, 1998, Nancy Gross, Combined's then-Director of Human Resources, held a meeting with Tressel and Lippai to discuss the age discrimination allegations raised in the December 22, 1997, memo. (Pl.'s LR 56.1(a)(3) ¶ 50; Def.'s LR 56.1(a)(3) ¶ 31.) Lippai stated that Tressel had not yet been promoted to Assistant Vice President because Tressel had not dealt with Combined's upper management business issues, although "he was a very good actuary technically." (Def.'s LR 56.1(a)(3) ¶ 31.)

On January 29, 1998, Lippai, Gross and Tressel met again to discuss Tressel's concern about not being promoted to Assistant Vice President. (Def.'s LR 56.1(a)(3) ¶ 32.) During that meeting, Lippai stated that Tressel's promotion to Assistant Vice President was highly unlikely because the new president of the company was not familiar with Tressel's work and because Tressel lacked the broad-based business thinking that is required for such a promotion. (*Id.*)

On November 9, 1998, Lippai sent Tressel a memo concerning the promotion to Assistant Vice President. (Pl.'s LR 56.1(a)(3) ¶ 37; Def.'s LR 56.1(a)(3) ¶ 39.) In that memo, Lippai articulated the many criteria that are used to determine if someone should be promoted to Assistant Vice President, assuming that a business impact warrants such a need for that position. (Def.'s LR 56.1(a)(3) ¶ 39.) One of the many factors that could

5

be used to determine if someone should be promoted was if the person were an FCIA, because it would create an area of expertise. (*Id.*) In addition however, one still needed to make a positive business impact that was consistently demonstrated over a number of years. (*Id.*)

Tressel received his yearly performance review for the year 2000 in early 2001. (Def.'s LR 56.1(a)(3) ¶ 45.) In it Tressel was criticized for timeliness issues and was asked to condense or organize internal memos so that they would be better received by an internal audience. (*Id.*)

On March 12, 2001, Tressel filed an age discrimination charge against Combined with the U.S. Equal Employment Opportunity Commission ("EEOC") and was issued a Right to Sue in May 2001. (Def.'s LR 56.1(a)(3) ¶¶ 47-48.) Tressel now also claims recovery under estoppel, negligent and intentional misrepresentation, inducement, deceit, breach of contract and quasi contract. (Compl. ¶ 66.) He seeks to be promoted to Assistant Vice President, granted back wages, statutory liquidated damages, attorneys' fees and other relief that is just. (*Id.*)

## DISCUSSION

Pursuant to Rule 56(c), the court may grant summary judgment if the pleadings, answers, interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only when there exists a genuine issue of material fact will the granting of summary judgment be inappropriate. *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). A genuine issue of material fact

6

exists if a jury could return a verdict for the nonmoving party based on sufficient evidence favoring that party. *Id.* When the court considers a motion for summary judgment, it does so in the light most favorable to that of the non-moving party. *Id.* The court must apply the summary judgment standard to each of the parties when they file cross-motions for summary judgment. *Mihalik v. Callahan*, No. 96 C 6755, 1997 WL 587496, at *5 (N.D. Ill. Sept. 16, 1997).

Both Tressel and Combined have moved for summary judgment. Tressel argues in his motion for summary judgment and his response to Combined's cross-motion the following: Combined violated the ADEA by (1) failing to promote him to the position of Assistant Vice President due to his age; (2) promoting Moore and Crockett more quickly than Tressel, due to Tressel's age; (3) retaliating against him by refusing to promote him after he filed an internal age discrimination complaint in 1997; (4) harassing Tressel; and (5) paying him less money and giving him fewer stock options than younger employees. (Pl.'s LR 56.1(a)(3) ¶¶ 15-16, 37.)

Combined has moved for summary judgment on the following grounds: (1) Combined did not violate the ADEA by failing to promote Tressel because Tressel's ADEA claims are untimely; (2) even if the ADEA claims were timely, Tressel fails to make a *prima facie* showing of age discrimination; (3) even if he could establish a *prima facie* showing of age discrimination, Tressel cannot show that Combined's proffered reason for refusing to promote him is pretextual; and (4) Tressel's state law claims are baseless and raise no genuine issues of fact.

The Court has carefully reviewed the record. After such review, the Court denies Tressel's motion for summary judgment and grants Combined's cross-motion.

## A. Local Rule 56.1: Noncompliance

Before discussing the merits of each party's summary judgment motion, it is necessary to note the particular importance that Local Rule LR 56.1 plays in summary judgment motions filed in the Northern District of Illinois. LR 56.1 requires a Rule 56(c) movant's motion to include a supporting memorandum of law and a "statement of material facts as to which the moving party contend there is no genuine issue...." LR 56.1(a)(2)-(3). "The statement [of material facts] . . . shall consist of short numbered paragraphs, including within each paragraph *specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts* set forth in that paragraph. *Failure to submit such a statement constitutes grounds for denial of the motion.*" LR 56.1(a) (emphasis added). The Court of Appeals for the Seventh Circuit has held that a district court may strictly enforce LR 56.1 because of the importance of the rule. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000).

Although Tressel is *pro se,* the Supreme Court has held that *pro se* litigants must follow rules of procedure and that mistakes of civil procedure do not excuse those who proceed without counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Furthermore, it is noted by the Court that because Tressel has held himself out to be a licensed attorney, it is inexcusable for him not to follow the required rules of which he has been made well aware.

It is true that a motion for summary judgment should not be granted unless a *pro se* litigant has received clear notice as to what needs to be filed and the consequences of not following the local rules. *Puccini v. United Air Lines, Inc.*, No. 98 C 8140, 2000 WL

8

1720989, at \*5 (N.D. Ill. Nov. 16, 2000). Here, Combined filed with the Court the memorandum entitled: "Local Rule 56.2 Notice to *Pro Se* Litigant, Harry K. Tressel, Opposing Summary Judgment," on June 14, 2002, and thus, Combined gave proper notice to Tressel of the Northern District of Illinois local rule regarding summary judgment. Although *pro se* litigants are granted more leniency than a party who is represented by council, the *pro se* litigant is still required to follow the rules of procedure and LR 56.1. *McNeil*, 508 U.S. at 113. Because employment cases are so fact-intensive "neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes . . . .'" *Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994)).

Here, Tressel's fifty-seven-paragraph LR 56.1(a)(3) statement filed with the Court has only three citations to the record. The brief is entitled "Statement of Material Facts Affidavit in Support of Motion for Summary Judgment." From its title, it would seem as though Tressel is attempting to meet the requirement of LR 56.1 paragraph citations to the record by submitting the entire brief as an affidavit.

The United States Code has a section regarding the procedure of evidence and documentation for a document purporting to be an affidavit or declaration executed within the United States. 28 U.S.C. § 1746. The purporting document must state: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." *Id.*

Tressel's LR 56.1(a)(3) submission does not contain the statement that 28 U.S.C. § 1746 requires. Therefore, the statement will not be regarded as an affidavit for the

9

purposes of LR 56.1.

Just as Tressel's LR 56.1(a)(3) statement fails to meet the requirements of an affidavit, it also fails to meet the requirements of LR 56.1 because all but three paragraphs lack citations to the record and therefore, his motion for summary judgment could be denied without further inquiry from the Court. However, out of an abundance of caution, the Court will nonetheless consider those statements of which Tressel could be deemed to have personal knowledge.

In a Rule 56 summary judgment motion, a person can be deemed to have personal knowledge of facts that are not conclusory or conclusions of law. *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 163 (7th Cir. 1987). The facts deemed by a party to have personal knowledge cannot be facts that are made on information and belief or simply belief alone. *Id.*

To make the determination of whether Tressel had personal knowledge of a paragraph in his LR 56.1(a)(3) submission, the Court not only looked at Tressel's LR 56.1(a)(3) brief, but also at his Declaration and Reply to Defendant's Local Rule 56.1(b)(3) Statements of Facts in Opposition to Plaintiff's Motion for Summary Judgment filed on July 22, 2002. LR 56.1 does not contemplate the latter filing, and therefore, the Court would normally strike the submission and disregard it and any response relying solely on the statements therein. *Dority v. City of Chicago*, No. 98 C 4893, 2001 WL 1155286, at *4 (N.D. Ill. Sept. 28, 2001).

Tressel is *pro se*. Because of his *pro se* status, the Court has given him the benefit of only striking those paragraphs in his Declaration and Reply to Defendant's Local Rule 56.1(b)(3) Statements of Facts in Opposition to Plaintiff's Motion for

Summary Judgment that do not directly support statements made in his LR 56.1(a)(3) submission. Even with that great amount of leniency given to Tressel by the Court, his motion for summary judgment still fails.

## B. Scope of EEOC Charge and Notice of Allegations in Complaint

The principle purpose of the complaint is to give the defendant and the court adequate notice of an allegation to which a response must be made. *Wislocki-Goin v. Mears*, 831 F.2d 1374, 1381-82 (7th Cir. 1987). Not only must the complaint give notice to the defendant of the claims against it, but the judicial proceedings are also limited by the scope of the plaintiff's EEOC charge. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (holding scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC.). "The basis for this rule is that '[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge . . . .'" *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)).

In order to determine whether allegations are within the scope of an EEOC charge, two tests must be met. *Cheek v. W. & So. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). First, a reasonable relationship between the allegations in the complaint and those found within the charge must be shown. *Id*. This means that "the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* at 501. Second, the claim in the complaint must be one that would

11

"reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (internal quotation omitted). For example, in *Cheek v. Western & So. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994), the court held that although plaintiff alleged sex discrimination in both her complaint and EEOC charge, the two claims were not alike or reasonably related just because they both alleged sex discrimination since an employer can discriminate on the basis of sex in numerous ways. *Id.*

Tressel argues in support of his motion that he was subjected to harassment[1] after he filed an internal age discrimination complaint in 1997 with Combined. However, Tressel did not complain of harassment in his EEOC charge. He neither mentioned the word "harassment" nor alleged that his supervisors or co-workers treated him so severely that it caused a significant change in his employment status. Therefore, the claim is dismissed. However, even if the Court were to find that the harassment claim is within the scope of the EEOC charge, which it does not, the fact that Tressel failed to allege harassment within his complaint, and thus did not provide Combined with notice of such a claim, bars the claim.

Next, Tressel states in his LR 56.1(a)(3) submission that he was paid less than Crockett, Uhl, Moore, and Resnick and provides support for this in his Declaration and Reply to Defendant's Local Rule 56.1(b)(3) Statements of Facts in Opposition to

---

[1]To establish harassment, the plaintiff must show that the acts of his co-workers' and supervisors' were "severe enough to cause a significant change in the plaintiff's employment status." Examples of this are when co-workers and/or supervisors, in response to the plaintiff filing an age discrimination complaint, use profanity to make one's "life hell," or embark on a campaign of vicious gossip. *Stutler v. Ill. Dep't of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001).

Plaintiff's Motion for Summary Judgment. However, he did not raise this allegation in his complaint or the EEOC charge. Furthermore, Tressel admits that it was not until June 2002, well after the complaint and EEOC charge were filed, that he learned of the wage differential. (Pl.'s Decl. & Reply ¶ 34.)

The wage differential claim is outside the scope of the charge because Tressel only mentioned in the EEOC Charge that "less senior, less qualified, less experienced co-workers have been promoted." (Compl. Ex., EEOC Charge.) The two different claims are not reasonably related. The general wage differential claim could not reasonably be expected to grow out of an EEOC investigation into promotions of younger employees. Furthermore, even if the Court were to find that the wage differential claim falls within the scope of the EEOC Charge, which it does not, it would still grant summary judgment in favor of Combined because Tressel did not allege the wage differential claim in the complaint and consequently failed to give Combined proper notice of such claim.

Tressel alleges in the EEOC Charge that he was retaliated against when Combined refused to promote him after he filed an internal age discrimination complaint in 1997. Although Tressel does not explicitly say in the complaint that he was retaliated against, the Court infers that he does because Tressel alleges discrimination that occurred at dates subsequent to the filing of the internal age discrimination complaint. (Compl. ¶ 33.) Therefore, the Court finds that this retaliation claim is within the scope of the EEOC charge and was adequately pleaded in the complaint.

In sum, Tressel's harassment claim and other claims based on wage differentials are barred due to Tressel's failure to raise them in the EEOC charge or in the complaint. Therefore, with regard to these claims, the Court grants Combined's motion for summary

13

judgment and denies Tressel's motion for summary judgment. Because Tressel sufficiently raised his retaliation claim based on Combined's refusal to promote him after he filed an internal age discrimination complaint in 1997 in his EEOC charge and in the complaint, the Court will further address the claim below.

## C. 300-Day Statute of Limitations

In order to have an ADEA claim of age discrimination considered by the court, one must timely file a charge with the EEOC. 29 U.S.C. § 626(d); *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 603 (7th Cir. 1992). "In a deferral state such as Illinois, an ADEA plaintiff must file an EEOC charge 'within 300 days after the alleged unlawful practice occurred . . . .'" *Id.* (quoting 29 U.S.C. § 626(d)(2)). The time at which the 300-day clock starts is when the discriminatory act occurs, not when the consequences of those acts become most painful. *Id.*

Here, Tressel admits that he first believed Combined was discriminating against him in November or December of 1997, shortly after Uhl was promoted and Tressel was not. This belief is especially evident because he filed an internal age discrimination complaint in 1997. Thus, Tressel had 300 days from that time to file a charge with the EEOC. Tressel failed to do this; he filed his EEOC charge on March 12, 2001, and thus his claim of age discrimination based on that event is time barred.

Tressel also feels that Combined violated the ADEA when it treated Moore and Crockett more favorably than he when they received promotions in April 1999 at the same time Tressel was promoted. This claim is time barred. This alleged conduct occurred in April 1999, approximately one year before May 16, 2000, *i.e.*, the cut-off

14

date marking the 300-day window preceding his filing of the EEOC charge on March 12, 2001.

Tressel alleges in his EEOC Charge that Combine retaliated against him when Combined waited until 1999 to promote him after he filed an internal age discrimination complaint in 1997 and when Combined failed to promote him to the position of Assistant Vice President in 1997. He states in the EEOC charge, "*Since that time* [after filing the internal age discrimination complaint] and continuing [sic] I have been subjected to retaliation in that *I have been denied promotion to Assistant Vice President* [sic] and I have been denied the wage increases associated with that promotion." (Compl., Ex., EEOC Charge.) (emphasis added). Because the charge was filed on March 12, 2001, he failed to meet the 300-day requirement for the age discrimination claim. Thus, claims based on this event are time barred.

Tressel alleges that such claims are not time barred because they are a part of a continuing violation of the ADEA, and thus, not only was he denied the promotion in 1997 to Assistant Vice President, but he continues to be denied promotion every day that he works for defendant. A *continuing violation* theory can be used so long as one discriminatory act falls within the 300-day limitation period. *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2072-73 (2002). To determine liability for the act that fell within the 300-day period, all other discrimination claims that are plausibly or sufficiently related to the act may be considered. *Id.* However,

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time

15

period after the discrete discriminatory act occurred.

*Id.* Once the victim first realizes that he or she may be discriminated against, even when the employer acts covertly, the clock begins to run. *Jones v. Merchs. Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994).

Each particular denial of a promotion is considered a discrete act. *Id.*; *Nat'l R.R.*, 122 S. Ct. at 2073. Thus, once the person knows, or should have known, that he did not receive the promotion and someone else was promoted instead, that event constitutes a discrete act which starts the 300-day clock. *Jones*, 42 F.3d at 1058 (holding that employee's claims were not able to rely on continuing violation theory because the employee was aware of not being promoted and failed to file a discrimination charge with the EEOC within the statutory period.).

Here, it is undisputed that Tressel did in fact know about Uhl's promotion and at that time suspected discrimination, did in fact know about the promotion of Crockett and Moore in April 1999 (when Tressel was also promoted to the same position as them) and suspected discrimination, and did in fact believe he had been retaliated against when Combined waited to promote him after he filed an internal age discrimination complaint. (Pl.'s LR 56.1(a)(3) ¶¶ 15, 16; Compl. ¶¶ 33, 45, 47; EEOC Charge; Def.'s LR 56.1(a)(3) ¶ 46.) Thus, he cannot rely on a continuing violation theory because he failed to file an EEOC charge within the 300-day time period for any one of these discrete acts. Therefore, those claims are time barred, unless equitable estoppel or equitable tolling apply.

There are two ways to avoid the 300-day statutory period: equitable tolling and

16

equitable estoppel. Tolling allows the plaintiff to avoid the statutory limitation period when, despite due diligence, the plaintiff is unable to "obtain vital information bearing on the existence of his claim." *Hamilton*, 964 F.2d at 605. Here, Tressel admits that he thought he was discriminated against in November or December of 1997, when Uhl was promoted and he was not, and in April of 1999 when he was promoted at a slower rate than Crockett and Moore. (Def.'s LR 56.1(a)(3) ¶ 46.) Thus, Tressel had the vital information necessary to file a charge with the EEOC but failed to do so. Thus, the statutory limitations period cannot be tolled.

Another way to avoid the statutory limitations period is by equitable estoppel, sometimes referred to as fraud concealment. *Hentosh v. Herman M. Finch Univ. of Health Scis.*, 167 F.3d 1170, 1174 (7th Cir. 1999). This applies when the employer takes active steps to avoid having the employee file a charge with the EEOC. *Hamilton*, 964 F.2d at 605. An employer actively takes steps when it hinders, hides evidence, promises not to plead the statute of limitations or otherwise prevents the plaintiff from bringing suit. *Casteel v. Exec. Bd. of Local 703 of Int'l Bhd. of Teamsters*, 272 F.3d 463, 467 (7th Cir. 2001); *Hentosh*, 167 F.3d at 1174.

Here, Tressel has failed to provide any evidence that Combined actively took steps to keep him from filing a discrimination charge with the EEOC. After review of the record, the only scintilla of evidence that the Court could find was that Lippai stated to Tressel in their November 20, 1997 meeting that Tressel's promotion to Assistant Vice President was still a few years off. This statement hardly rises to the level of Combined's preventing, hindering or hiding evidence in order to keep Tressel from filing a charge with the EEOC. Thus, equitable estoppel cannot be invoked.

17

In sum, the 300-day statute of limitations bars Tressel from basing any of his ADEA claims on events that occurred prior to May 16, 2000. Further the Court finds the continuing violation doctrine, equitable tolling and equitable estoppel inapplicable given the undisputed facts of this case.

### D. Age Discrimination and Retaliation Claims

The only conduct upon which Tressel could base his age discrimination and retaliation claims would be those *discrete acts* of discrimination that occurred within the 300-day period before filing the EEOC charge. Thus, because Tressel filed the charge with the EEOC on March 12, 2001, those claims that are still viable would be the discrete discriminatory acts that occurred after May 16, 2000. During that time frame, Tressel argues that Combined failed to promote him generally, although he points to no particular promotion decision that occurred.

Failure to promote is a discrete act; however, to meet the *prima facie* case for failure to promote due to age discrimination not only must Tressel show that he was (1) in the protected class; (2) applied for and was qualified for the position sought; and (3) was rejected for the position; but he must also show (4) that someone else was promoted to the position from outside the protected group with similar or lesser qualifications than Tressel. *Nat'l R.R.*, 122 S. Ct. at 2073; *Schaefer v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th Cir. 2001), *cert. denied*, *Quincy Mall, Inc. v. Parisian, Inc.*, 122 S. Ct. 2359 (2002); *Jones*, 42 F.3d at 1058. Thus, mere continuation of employment is not a discrete act, and therefore, it is "insufficient to prolong the life of a cause of action for employment discrimination." *Hamilton*, 964 F.2d at 604 (quoting *Delaware State*

*College v. Ricks*, 449 U.S. 250, 257 (1980)).

Here, even if the Court were to assume that Tressel met the first three elements of the *prima facie* case for failure to promote due to age discrimination, he certainly has not met his burden of establishing the fourth element: that someone outside the protected class was promoted to the position instead of him within the 300-day limitation period. Tressel fails to allege that anyone was promoted to the position of Assistant Vice President between May 16, 2000, and March 12, 2001. He only argues that he continued his employment and was not promoted. That it is not a discrete act, and therefore it is not a valid claim.

After reviewing the record, the Court finds one event that occurred within the 300-day period: the performance appraisal for the year 2000, delivered to Tressel in early 2001. (Def.'s LR 56.1(a)(3) ¶ 45.) In that evaluation, Tressel received less than a perfect score due to timeliness issues and the need to better organize and condense internal memos. (Def.'s LR 56.1(a)(3) ¶ 45.) Although Tressel does not appear to base any discrimination or retaliation claim on this act or any other discrete act within the allowed time period, out of an abundance of caution, the Court will analyze whether this act constitutes discrimination or retaliation.

In order to establish a *prima facie* case of discrimination or retaliation under the *McDonnell Douglas* burden-shifting method, a plaintiff must show that he was subjected to an adverse employment action. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002) (discrimination); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002) (retaliation). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an

19

actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Negative performance evaluations, even if undeserved, cannot constitute the sole basis for a finding of an adverse action. *Id.* at 442-43.

Viewing the facts in the record in the light most favorable to Tressel, the Court finds that his performance appraisal for 2000 does not constitute an adverse employment action. He points to no consequences of his receiving criticism in that performance appraisal beyond his sheer speculation that each and every day he continues to work for Combined, he continues to be denied a promotion. Further, even if the Court were to find that Tressel's somewhat negative performance appraisal for 2000 could constitute an adverse employment action, which it does not, Tressel fails to establish a *prima facie* case of discrimination or retaliation because he has failed to point to the performance reviews of any similarly situated individual who either was not in his protected age class or did not complain. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772 (7th Cir. 2002) (requiring plaintiff alleging age discrimination under *McDonnell Douglas* method to establish in part that similarly situated employees not in the protected age class were treated more favorably); *Stone*, 281 F.3d at 642-43 (requiring plaintiff alleging retaliation under *McDonnell Douglas* method to show in part that only he, and not any otherwise similarly situated employee who did not complain, was subjected to an adverse employment action). Clearly Tressel has failed to establish a *prima facie* case of discrimination and retaliation under the *McDonnell Douglas* method.[2]

---

[2]Besides the *McDonnell Douglas prima facie* case elements outlined in *Stone*, retaliation may also be established by direct proof. *Stone*, 281 F.3d at 644. Under the direct evidence route, Tressel must present:

    direct evidence (evidence that establishes without resort to inferences from

In sum, the Court finds that Tressel has failed to create a genuine issue as to a material fact regarding his discrimination and retaliation claim. The Court thus grants Combined's summary judgment motion and denies Tressel's summary judgment motion.

## E. State Law Claims

The district court may deny supplemental jurisdiction over state law claims for a number of reasons, one of which is when the district court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because Tressel's ADEA claims were the only claims over which the Court had original jurisdiction and because such claims have been dismissed, the Court exercises its discretion and dismisses the remaining state law claims. *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1256 (7th Cir. 1988) (holding that district court was within its authority to dismiss remaining state law claims after plaintiff's ADEA claim was dismissed.); *see also Pleva v. Norquist*, 195 F.3d 905, 917-18 (7th Cir. 1999) (stating that dismissing state contract claim was not an abuse of discretion after having dismissed ADEA claim).

---

circumstantial evidence) that he engaged in a protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains.
*Id.* The showing of mere temporal proximity between the date of the exercising of the protected activity and the alleged discriminatory act is rarely "sufficient in and of itself to create [a] triable issue." *Id.*

Tressel filed an internal age discrimination complaint in 1997 and received a somewhat negative performance appraisal for 2000. Here, there are approximately three years separating Tressel's internal complaint and the negative performance appraisal. The time span between the two acts is too attenuated to be direct evidence of retaliation.

## CONCLUSION

For the foregoing reasons, the Court denies Tressel's motion for summary

judgment [doc. no. 17-1] and grants Combined's cross-motion for summary judgment

[doc. no. 19-1]. The Court enters judgment in favor of Combined. The Court declines to

exercise supplemental jurisdiction over Tressel's state law claims pursuant to 28 U.S.C. §

1367(c)(3). This case is hereby terminated.

**SO ORDERED**                    ENTERED: *3/25/03.*

HON. RONALD A. GUZMAN
**United States Judge**